**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| SHELVY A. CORNISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-07-22 |
| | § | |
| PATTERNSON-UTI DRILLING | § | |
| COMPANY, LP, LLLP, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Pending before the Court is Defendant Patterson-UTI Drilling Company, LP, LLLP's Motion For Summary Judgment. (Dkt. #25). Having considered the motion, response, reply, the record and the relevant law, the Court is of the opinion that Defendant's motion should be DENIED.

**Background**

The following facts are presented in the light most favorable to Plaintiff Shelvy A. Cornish ("Cornish").

Cornish is a female oilfield worker with over thirty years of experience. She has worked as a floorhand and driller and has also installed casing.

Cornish became acquainted with another oilfield hand, Dwain[1] Maurer ("Maurer"), through her oilfield work. Cornish and Maurer had gotten to know each other "[t]hrough roughnecking in the oilfield for the last 30-something years." (Dkt. #28-3 at 5). Prior to the employment dispute at issue, Cornish had asked Maurer to inform her of any oilfield job opportunities that became available. Maurer agreed, as was customary in the industry.

---

[1] The record before the Court contains two variations of the spelling of Maurer's first name.

During the time period pertinent to this case, Maurer was employed by Patterson-UTI Drilling Company, LP, LLLP ("Patterson") as a driller on rig 160. As a driller, Maurer was the second person in charge on the rig. His immediate boss was the rig manager, or toolpusher, Gary Smith ("Smith"). Several employees operated under Maurer and Smith, namely, one derrickman, one motorman, and two floorhands. A pithand would also be added to the crew if requested by the company's client. The pithand would essentially function as a third floorhand.

On approximately June 15, 2005, Maurer became aware that he was going to be shorthanded and would need someone to fill a pithand position. Maurer decided to recommend Cornish for the job. Although Smith had sole hiring authority, Maurer routinely recommended individuals for positions on rig 160. Throughout Maurer's oilfield career, the vast majority of individuals hired on the rig were recommended by him. Most hands at Patterson were hired though these direct word-of-mouth recommendations. Once a hand was approved by a toolpusher, they were sent in for orientation at the Patterson yard. Orientation involved filling out an application, filling out other paperwork, conducting an interview, taking a drug test, watching various videos and receiving a handbook.

The Patterson yard also maintained an "approved applicants list." This list identified available hands who walked-in for orientation, but were not pre-approved by any driller or toolpusher. The hands on the "approved applicants list" were most commonly employed when no one was recommended by a driller or toolpusher.

Maurer subsequently had a conversation about hiring Cornish with Smith and Darrell Spell ("Spell"), the drilling superintendent and Smith's boss.[2] While in the presence of Smith and Spell

---

[2] Spell is also Cornish's half-brother.

in Smith's small office, Maurer indicated that he wanted to hire Cornish. Spell responded by making the following statement: "You have not hired her yet?" (Dkt. #28-3 at 18). Maurer understood this response to indicate approval to hire Cornish. Smith, however, did not immediately respond. Smith later made the following comment: "Well, she has to take orientation." (Dkt. #28-3 at 23). Maurer responded as follows: "Okay. She will be going in this next week. I will get in touch with her. As soon as I get on days off, she will go in and take the orientation." (Dkt. #28-3 at 23). Maurer, Smith and Spell did not further discuss Cornish's hiring during their discussion.

Between June 15, 2005 and June 20, 2005, Maurer informed Cornish that she had been accepted for the position at issue and had to report for orientation. However, neither Maurer nor Smith informed the Patterson yard that Cornish had been selected for hiring. It is undisputed that Cornish was required to complete orientation before being allowed to work. Once a candidate was approved by a toolpusher for work, the toolpusher would normally contact the Patterson yard to inform it of his decision.

On June 21, 2005, Ronnie Lee Brown, Jr. ("Brown") walked-in to the Patterson yard, filled out an application for employment, completed orientation and had his name put on the "approved applicants list." He was not pre-approved by any Patterson toolpusher.

On June 22, 2005, Smith signed an employment eligibility form indicating that he accepted Brown for employment. Smith hired Brown for the pithand position at issue in this case. It is unclear as to the precise time Smith signed the form.

On the morning of June 22, 2005, Cornish arrived at the Patterson yard for orientation. She filled out an application and completed a drug test. Cornish also informed the attendant Patterson representative, Titus Clifton ("Clifton"), that she had been hired by Maurer for rig 160. (Dkt. #28-2

3

at 13). Clifton told Cornish that he had no record indicating that she was pre-approved by Smith. Clifton then stated that he would call rig 160 and check if Smith had approved her. Before Clifton could get into contact with Smith, Cornish and all of the other individuals undergoing orientation left for lunch. Approximately 10 minutes after Cornish left, she received a phone call from Clifton on her mobile phone. Clifton indicated that the pit hand position that she was interested in had been filled and that she did not need to come back. Cornish did not return to the Patterson yard.

On either June 22, 2005 or June 23, 2005, Maurer attended a supervisor training school. At the event, either Smith or Spell approached Maurer and informed him that they had spoken with Mike Reimers ("Reimers"), the "head person with Patterson in the Victoria area." Maurer was told that Cornish was not hired because "they did not want to go there." Maurer understood this to mean that Cornish was not hired because she was female.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of

material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Discussion

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Cornish must raise a genuine issue of material fact under the burden shifting test announced in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the burden shifting test, the allocation of the burden of production and the order for presentation of proof is as follows: (1) a plaintiff must first establish a *prima facie* case of

discrimination; (2) if the plaintiff meets her burden, then the burden of production shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for its actions; and (3) if the defendant produces a legitimate reason, then the presumption of discrimination vanishes, and the plaintiff must demonstrate a genuine issue of material fact that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43, 120 S.C.t 2097, 147 L.Ed.2d 105 (2000). The Court of Appeals for the Fifth Circuit has held that a *prima facie* case is established when evidence of the following is presented: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for her position; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)(citations omitted). Furthermore, a plaintiff is generally required to show that she was denied an available position to establish a prima facie case. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Musgrove v. Mobil Business Resources Corp.*, No. 3:97-CV-2795-P, 1999 WL 1080931 at *3 (N.D. Tex. Nov. 29, 1999)(citations omitted). However, the elements of a plaintiff's prima facie case necessarily vary according to the facts of each case and the nature of the claims asserted. *McDonnell Douglas*, 411 U.S. at 802 n.13.

Patterson does not dispute that Cornish is a member of a protected class and that she was qualified for the pithand position at issue. Instead, Patterson argues that Cornish cannot establish a prima facie case because the pithand position was not available at the time Cornish applied. Patterson hinges its argument on the assertion that Brown was hired for the pithand position one day before Cornish applied.

To establish that Brown was hired on June 21, 2005, Patterson directs the Court to his employment application dated June 21, 2005, his employment eligibility form dated June 21, 2005, and a daily drilling report dated June 23, 2005. (Dkt. #25 at 9). Brown's employment application and the referenced drilling report do not appear to document the date and time of his actual hiring. Brown's employment eligibility form, however, does document his hiring. The portion of the form to be completed by the toolpusher states that "I have interviewed this applicant and have accepted them for Employment on Rig 160 for the position of floorhand." This portion of the form was signed by Smith on June 22, 2005. Therefore this evidence, standing on its own, does not establish that Brown was hired on June 21, 2005.

Although the evidence described above does not show that Brown was hired on June 21, 2005, Patterson has also submitted the deposition testimony of Clifton and Smith. This testimony indicates that Brown was hired before Clifton contacted Smith on June 22, 2005, the date of Cornish's orientation.

The Court finds that even if Brown was approved by Smith before Clifton contacted him on June 22, 2005, summary judgment is not warranted. Maurer's deposition testimony colorably indicates that Smith accepted Cornish for the pithand position before Brown was hired. Although Cornish had not gone through orientation at that time, it would have been customary and expected for the pithand position to be held open for Cornish until she completed orientation. *See* (Dkt. #28-3 at 7); (Dkt. #28-3 at 15). Smith had the ultimate authority for hiring and firing and although the Patterson yard conducted orientation, they did not hire or fire individuals. (Dkt. #25 at 31). For purposes of employment discrimination, the Court finds that Smith's alleged acceptance of Cornish for the position of pithand may be considered the time of her employment or the time of her

7

application for employment in this case.

Patterson next argues that Cornish cannot establish a prima facie case because Cornish cannot show that Patterson continued to seek applicants with Cornish's qualifications. Patterson maintains that additional applicants were not sought because the position at issue was filled by Brown the day before Cornish applied.

The Court finds that this argument fails because it rests on the assumption that Cornish's date of hiring or application was June 22, 2005. Because a reasonable jury could find that Cornish applied for employment and was rejected before Brown was hired, Cornish could indeed prove that Patterson continued to seek applicants with her qualifications for the pit hand position.

Patterson lastly argues that if Cornish can establish a prima facie case, her failure to apply for an open position is a legitimate non-discriminatory reason for Patterson's actions. This Court disagrees with Patterson and finds that this argument is without merit. As mentioned above, the Court finds that Cornish's request for employment via Maurer qualifies as a valid application for purposes of employment discrimination in this case. Furthermore, Cornish's deposition testimony indicates that Clifton told Cornish not to return to the Patterson yard on the day that Cornish had begun orientation. It would be unfair to require Cornish to complete her orientation when she was explicitly told not to do so. Cornish made a good faith effort to complete her orientation and Patterson's alleged decision to ask her not to return should not be held against her.

## Conclusion

For the foregoing reasons, Defendant Patterson-UTI Drilling Company, LP, LLLP's

Motion For Summary Judgment (Dkt. #25) is hereby DENIED.

    It is so ORDERED.

    Signed this 24th day of April, 2008.

                                            JOHN D. RAINEY
                                  UNITED STATES DISTRICT JUDGE